IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOUTHWEST ROCK PRODUCTS, LLC,

                Plaintiff and Counterdefendant,

vs.                                    No. CIV 12-0180 JB/GBW

J.A.R. CONCRETE, INC.,

                Defendants and Counterclaimants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Partial Summary Judgment, filed January 4, 2013 (Doc. 45)("MPSJ").  The Court held a hearing on September 24, 2013.  The primary issues are: (i) whether there is a genuine issue of material fact whether there are two contracts between Plaintiff Southwest Rock Products, L.L.C. ("Southwest Rock") and Defendant J.A.R. Concrete, Inc. ("J.A.R. Concrete"); (ii) whether there is a genuine issue of material fact whether J.A.R. Concrete owes Southwest Rock at least $137,417.22; and (iii) whether the Court should award Southwest Rock that amount.  The Court concludes that: (i) there are two contracts; (ii) there is no genuine issue of material fact whether J.A.R. Concrete owes Southwest Rock at least $137,417.22; and (iii) Southwest Rock's failure to sign the lien releases that the parties' contracts require prevents the Court from awarding Southwest Rock the minimum amount J.A.R. Concrete owes it.  The Court will, therefore, grant the motion in part and deny it in part.

---

[1] The Court entered an Order, filed September 30, 2013 (Doc. 65), granting in part and denying in part the Plaintiff's Motion for Partial Summary Judgment, filed January 4, 2013 (Doc. 45), and stating: "The Court will . . . issue a memorandum opinion more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion is the promised opinion.

**FACTUAL BACKGROUND**

The facts in the MPSJ briefing are insufficient to place the MPSJ in context.  The Court will, therefore, explain the factual background in two parts.  First, it will describe the general background using the facts alleged in the Complaint for Breach of Contract and Prima Facie Tort, filed February 27, 2012 (Doc. 1)("Complaint").  The Court will then will focus on those facts relevant to the MPSJ.

1.      **Facts Not Relevant to the MPSJ.**

This case arises out of a business dispute between Southwest Rock, an Arizona limited liability company doing business throughout the southwestern United States, and J.A.R. Concrete, a Texas corporation, with its principal place of business in Texas and doing business in New Mexico.  See Complaint ¶ 1-2, at 1.  J.A.R. Concrete, which works in the construction industry in New Mexico, contracted with "the New Mexico Department of Transportation to resurface an interstate highway designated in southern New Mexico as I-25 in designated areas located within Dona Ana County, New Mexico."  Complaint ¶ 3, at 1; see id. ¶ 7, at 2.  Southwest Rock and J.A.R. Concrete agreed that Southwest Rock would supply J.A.R. with particular quantities of crushed rock, and that Southwest Rock would subcontract with M.C. Donegan, LLC -- a New Mexico limited liability company -- to blast and drill "the materials at a rock quarry owned by Torro Rock Products in Organ, New Mexico."  Complaint ¶ 6, at 2.  J.A.R. Concrete and Torro Rock agreed that Torro Rock "would provide a quarry for the blasting of rock and would also have sufficient space to allow for the crushing plant of the Plaintiff as well as an asphalt plant" that Torro Rock would operate.  Complaint ¶ 8, at 2.  Southwest Rock and J.A.R. Concrete separately agreed that Southwest Rock would crush additional material for J.A.R. Concrete to use in a separate project on Interstate 10 in Dona Ana County.  See Complaint

¶ 9, at 2. Both contracts provided that Southwest Rock would pay for the blasting and that only M.C. Donegan could blast the materials. See Complaint ¶ 10, at 2.

Southwest Rock performed under the contracts in May, 2010, and sent by facsimile transmission an invoice to J.A.R. Concrete on June 1, 2010, "indicating a total outstanding balance of $239,090.85, which at that time was seriously past due as a result of the Defendant not making payments to plaintiff under" their contracts' terms; J.A.R. Concrete has not paid this balance. Complaint ¶¶ 11-13, at 2-3. On June 22, 2010, J.A.R. Concrete tried to force Southwest Rock to accept a compromise "by sending two lien releases, one in the amount of $30,259.52 for Plaintiff individually, and the second lien release in check in the amount of $93,553.11, requiring a waiver and release by Plaintiff as well as M.C. Donegan." Complaint ¶ 14, at 3. J.A.R. Concrete based its allegation that Southwest Rock "had not crushed appropriate amounts of materials . . . on its own stock pile surveys, which had been done before" Southwest Rock had finished its work, "and therefore could not be accurate." Complaint ¶ 15, at 2. According to the Complaint, J.A.R. Concrete knew that Southwest Rock had not finished crushing rock at the time of J.A.R. Concrete's survey and that the survey was, accordingly, inaccurate, because J.A.R. Concrete's representative verified that Southwest Rock had crushed appropriate amounts of rock. See Complaint ¶ 16, at 2.

> At the end of June of 2010, Defendant, instead of paying the Plaintiff, indicated that the Defendant would instead pay M.C. Donegan, LLC, because M.C. Donegan, LLC claimed that it had not been paid by Plaintiff, and Defendant chose to ignore that its failure to pay Plaintiff had created Plaintiff's inability to pay M.C. Donegan, LLC.

Complaint ¶ 17, at 3-4. J.A.R. Concrete has not released any monies, insisting that Southwest Rock must first "sign a release of all claims for any monies beyond $107,974.80, an amount well below" what J.A.R. Concrete owes Southwest Rock. Complaint ¶ 18, at 4.

2.    **Facts Relevant to the MPSJ.**

Many facts on which the present motion focuses are undisputed.  The parties entered into two valid contracts in early 2010, under which Southwest Rock would provide J.A.R. Concrete with crushed rock.  See Southwest's Memorandum in Support of Motion for Partial Summary Judgment ¶ 1, at 2, filed January 4, 2013 (Doc. 46)("Memo. in Support of MPSJ")(setting forth these facts); Response in Opposition to Plaintiff's Motion for Partial Summary Judgment ¶ 1, at 2, filed January 28, 2013 (Doc. 56)("Response")(not controverting this fact).[2]  Southwest Rock provided J.A.R. Concrete crushed material in accordance with their agreements.  See Memo. in Support of MPSJ ¶ 3, at 3 (setting forth this fact); Response ¶ 3, at 2 (not controverting this fact). J.A.R. Concrete owes Southwest Rock an outstanding balance.  See Memo. in Support of MPSJ ¶ 4, at 4 (setting forth this fact); Defendant J.A.R. Concrete, Inc.'s Answers to Plaintiff's Requests for Admissions at 2, filed January 4, 2013 (Doc. 46-2)("RFA")(not controverting this fact).[3]  Those contracts contained the following two provisions:

> 4.3    Buyer's obligation to pay Seller is also conditioned upon Seller's timely and prior submittal of conditional and unconditional lien and bond releases in a form acceptable to Buyer.  Buyer retains the right to take whatever steps it

---

[2] The parties disagree about when they entered into the second agreement.  In its MPSJ, Southwest Rock contends that the parties entered into it in February, 2010, but J.A.R. Concrete alleges that they entered into it in March, 2010, and Southwest Rock's exhibits demonstrate that the March date is correct.  See Purchase Agreement at 3, executed January 25, 2010, filed January 4, 2013 (Doc. 46-1); Purchase Agreement at 3, executed March 30, 2010, filed January 4, 2013 (Doc. 46-1).  This dispute is, in any event, immaterial; nothing turns on the date.  "J.A.R. Concrete does admit entering into the two contracts submitted as Plaintiff's exhibits."  Response ¶ 2, at 2.

[3] J.A.R. Concrete purports to dispute this fact, saying it "is a legal argument and a legal conclusion, but not a statement of uncontroverted material fact.  The evidentiary record cited by the movant does not establish this conclusory argument as uncontroverted fact."  Response ¶ 4, at 2.  J.A.R. Concrete expressly admits that "there is a remaining amount owed to Southwest Rock Products, LLC by J.A.R. Concrete, Inc., based on" copies of the contracts attached to Plaintiff's Requests for Admissions, filed January 4, 2013 (Doc. 46-1).  J.A.R. Concrete has not pointed to any portion of the record that contradicts this fact.  The Court, therefore, deems this fact undisputed.

deems necessary to ensure that all payments will be utilized to pay potential lien or bond claimants, including, but not limited to, the issuance of joint checks.

       4.4     If Buyer is notified of or discovers a deficiency in the materials/services provided by seller, or it appears Buyer could sustain any loss or damage as a result of any act or omission by Seller on this or any other project where the parties are working together, Buyer may, without penalty, withhold from any payment due Seller an amount that Buyer reasonably determines is required to cover said claims or damages. The exercise of this right shall not bar or waive any other rights or remedies that Buyer may have.

Purchase Agreement at 3, executed January 25, 2010, filed January 4, 2013 (Doc. 46-1); Purchase Agreement at 3, executed March 30, 2010, filed January 4, 2013 (Doc. 46-1).[4]

At all relevant times, Joe A. Rosales, Jr. was J.A.R. Concrete's president and authorized agent. See Memo. in Support of MPSJ ¶ 5, at 3 (setting forth this fact); see Response at 4 (not controverting this fact). Rosales admitted in writing that J.A.R. Concrete owes Southwest Rock payments of $29,442.42 and $107,947.80. See Memo. in Support of MPSJ ¶¶ 6-7, at 3 (setting forth this fact); Letter from Jose A. Rosales, Jr. to Robert Schull, dated September 16, 2010, filed January 4, 2013 (Doc. 46-1)("Rosales Letter").[5]

## PROCEDURAL BACKGROUND

Southwest Rock is suing J.A.R. Concrete, alleging breach of contract and prima facia tort. See Complaint at 4-6. Southwest Rock moves the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment. See Memo. in Support of MPSJ at 1.

---

[4] The Purchase Agreements are identical in relevant part. The Court will, therefore, cite the two Purchase Agreements as a singular "Purchase Agreement" for ease of reference.

[5] J.A.R. Concrete purports to dispute this fact, arguing that the evidentiary record does not establish it. In J.A.R. Concrete's view, its admissions that it owed Southwest Rock payments were subject to Southwest Rock executing a lien release, which Southwest Rock did not do; further, J.A.R. Concrete argues, it tried to make partial payment, but Southwest Rock did not accept its offer. See Response ¶ 6-7, at 3. Although Southwest Rock's failure to comply with the lien-release condition prevents the Court from entering judgment in Southwest Rock's favor, it does not vitiate J.A.R. Concrete's admission that J.A.R. Concrete owes Southwest a balance. The Court, therefore, deems this fact undisputed.

According to Southwest Rock, the parties do not genuinely dispute their contracts' existence. See Memo. in Support of MPSJ at 4-5.  In Southwest Rock's view, Rosales admitted that J.A.R. Concrete owes Southwest Rock $137,417.22, and yet J.A.R. Concrete has not paid Southwest Rock that money.  See Memo. in Support of MPSJ at 5.  J.A.R. Concrete separately admits that "[a]s of 9/16/2010 J.A.R. Concrete, Inc. owed Southwest Rock Products, LLC $137,417.22." RFA at 2.  Southwest Rock contends that J.A.R. Concrete admitted that it owes this amount by affirmatively responding to this request for admission: "Please admit that as of 9/16/2010 J.A.R. Concrete, Inc. owed Southwest Rock Products, LLC $137,417.22."  RFA at 2.  Southwest Rock argues that J.A.R. Concrete lacks any defense or excuse for its nonpayment.  See Memo. in Support of MPSJ at 5.  Further, Southwest Rock maintains that, because J.A.R. Concrete drafted the contracts, the Court should construe the contracts against J.A.R. Concrete, and states that, "[i]f J.A.R. disputed or contested any of the terms of the contract, it had a duty to speak up before Southwest Rock had completed the job and left the site."  Memo. in Support of MPSJ at 5.  Southwest Rock requests an order granting partial summary judgment, and awarding it $137,417.22, statutory interest, and attorney's fees and costs under the parties' contracts.  See Memo. in Support of MPSJ at 6.

J.A.R. Concrete concedes that the contracts exist, but argues that Southwest Rock did not produce and supply the correct amounts of the particular rocks that the contracts required; in J.A.R. Concrete's view, Southwest Rock has produced no evidence that it performed its obligations, and its performance is not an uncontroverted fact.  See Response at 1.  Further, J.A.R. Concrete contends, no evidence supports Southwest Rock's "assertion that it left the project or 'demobilized in May, 2010 with [J.A.R. Concrete's] knowledge.'"  Response at 1-2. J.A.R. Concrete states that it offered Southwest Rock payment for the usable rock Southwest

Rock produced, but conditioned that offer on Southwest Rock signing a lien release and otherwise assuring J.A.R. Concrete that Southwest Rock would pay M.C. Donegan, as the contracts entitled J.A.R. Concrete to do. See Response at 2. J.A.R Concrete states that, when Southwest Rock failed to comply with those conditions, J.A.R. Concrete withheld payment. See Response at 2. J.A.R. Concrete argues that its admissions that it owed Southwest Rock particular sums were subject to Southwest Rock's signing the lien release, which Southwest Rock did not do; J.A.R. Concrete also submits that it tried to pay Southwest Rock by issuing a joint check to Southwest Rock and M.C. Donegan, and Southwest Rock refused that payment as well. See Response at 3.

J.A.R. Concrete also contends that Southwest Rock did not perform its obligations under the contract; in fact, it has brought counterclaims for that alleged failure to perform. See Response at 3-4; see Answer to Complaint and Counterclaim ¶¶ 31-34, at 7-9, filed April 23, 2012 (Doc. 11). J.A.R. Concrete underscores that, following Southwest Rock's partial performance, J.A.R. Concrete agreed that it owed Southwest Rock certain amounts at the time, but did so subject to the lien release that the parties' contracts authorized in this paragraph:

> 4.3   Buyer's obligation to pay Seller is also conditioned upon Seller's timely and prior submittal of conditional and unconditional lien and bond releases in a form acceptable to Buyer. Buyer retains the right to take whatever steps it deems necessary to ensure that all payments will be utilized to pay potential lien or bond claimants, including, but not limited to, the issuance of joint checks.

Response at 5 (quoting Purchase Agreement at 3).

Further, J.A.R. Concrete argues, a second contract provision authorized J.A.R. Concrete to withhold payment under these conditions:

> 4.4   If Buyer is notified of or discovers a deficiency in the materials/services provided by seller, or it appears Buyer could sustain any loss or damage as a result of any act or omission by Seller on this or any other project where the parties are working together, Buyer may, without penalty, withhold

- 7 -

> from any payment due Seller an amount that Buyer reasonably determines is
> required to cover said claims or damages.  The exercise of this right shall not bar
> or waive any other rights or remedies that Buyer may have.

Response at 5 (quoting Purchase Agreement at 3).  J.A.R. Concrete says that, after it discovered that Southwest Rock was not paying M.C. Donegan, it indicated it would pay Southwest Rock using a joint check payable to Southwest Rock and to M.C. Donegan, but Southwest Rock refused this check.  See Response at 5-6 (citing Affidavit of Joe A. Rosales, Jr. at ¶¶ 5-9, executed January 28, 2013, filed January 28, 2013 (Doc. 56)).  J.A.R. Concrete argues that both the joint check and the lien release were reasonable and contractually authorized efforts to secure J.A.R. Concrete against any potential claim that M.C. Donegan might bring against J.A.R. Concrete if Southwest Rock failed to pay M.C. Donegan.  See Response at 6-7.  In its view, "[b]ecause [Southwest Rock] refused to execute the requested lien releases, and refused to accept payment by two-party check, J.A.R. . . . . necessarily and appropriately withheld payment, and did so within the conditions expressly allowed by the parties' written contracts, until [Southwest Rock] resolved its dispute with its blasting subcontractor."  Response at 7.

In Southwest Rock Products, LLC's Reply in Support of Motion for Partial Summary Judgment, filed February 11, 2013 (Doc. 59)("Reply"), Southwest Rock argues that, while factual issues regarding the total amount J.A.R. Concrete owes Southwest Rock remain unresolved, those disputes are immaterial to its motion.  See Reply at 1.  According to Southwest Rock,

> Defendant has admitted and does not dispute that it entered into two contracts
> with Plaintiff for rock crushing services.  Further, Defendant does not dispute that
> Plaintiff did indeed crush rock under those contracts for use by Defendant in its
> projects.  Defendant has admitted that an amount is owed to Plaintiff and that it
> has not been paid.  As such, there are no disputed issues of material fact that
> would preclude granting partial summary judgment.

- 8 -

Reply at 1.  Southwest Rock contends that, even though J.A.R. Concrete has admitted under oath to owing Southwest Rock $137,417.22, J.A.R. Concrete insists that it is entitled to withhold payment, because Southwest Rock refused to sign a lien release.  See Reply at 4-5.  In its view, J.A.R. Concrete's proposed release would have forced Southwest Rock "to sign a complete release for the entire job, which would cause them to forego payment of a substantial amount still due and owing, beyond the amount considered in this motion."  Reply at 4-5.  Further, Southwest Rock points out that J.A.R. Concrete did not attach a copy of any lien releases to its Response and argues that the Court cannot, therefore, consider those lien releases.  See Reply at 5.  Southwest Rock also argues that the release J.A.R. Concrete describes was coercive, and that J.A.R. Concrete's attempt to force Southwest Rock "to sign a release of all claims was an attempt to modify the terms of the written contract and, that act, in and of itself constitutes a breach."  Reply at 5 (emphasis in original).

Southwest Rock underscores that J.A.R. Concrete does not dispute that the contracts are valid, that Southwest Rock produced material under the contracts, or that it owes Southwest Rock $137,417.22 and has not paid it.  See Reply at 5.  In Southwest Rock's view, J.A.R. Concrete's position is that it "tried to pay, and couldn't because [Southwest Rock] refused to execute the coercive lien releases."  Reply at 5.  Southwest Rock points out that it made great efforts to get J.A.R. Concrete to pay while Southwest Rock litigated a separate case against M.C. Donegan; according to Southwest Rock, that separate litigation came about "as a result of the non-payment by [J.A.R. Concrete]" and has since concluded.  Reply at 5.  In Southwest Rock's view, J.A.R. Concrete's argument that it withheld payment until Southwest Rock resolved its dispute with M.C. Donegan "is disingenuous."  Reply at 5.  Southwest Rock also maintains that, in the present litigation, J.A.R. Concrete is "simply delaying payment to [Southwest Rock] with

the intent to cause further financial injury to" Southwest Rock.  Reply at 6-7.  In Southwest Rock's view, the fact that J.A.R. Concrete owes Southwest Rock $137,417.22 is undisputed, and "[t]he claim that [Southwest Rock's] failure to sign the release somehow protects [J.A.R. Concrete] from summary judgment is unfounded."  Reply at 6-7.

The Court held a hearing on September 24, 2013.  See Transcript of Hearing, taken September 24, 2013 ("Tr.").[6]  Southwest Rock began by focusing the Court's attention on the narrow issue of the "undisputed amount" J.A.R. Concrete owes it: $137,417.22.  See Tr. at 3:15-4:2 (White).  In its view, J.A.R. Concrete does not dispute that it owes Southwest Rock that amount, but instead relies on two "technical argument[s] under the contract" -- the lien-release argument and the performance argument.  Tr. at 4:3-22 (White).  Southwest Rock contended that the performance argument conflicts with the lien-release argument, and, further, J.A.R. Concrete did not provide the Court with facts to support the performance argument.  See Tr. at 4:15-22 (White).  While Southwest Rock conceded that the parties dispute the full amount that J.A.R. Concrete owes Southwest Rock, it nonetheless maintained that, in light of J.A.R. Concrete's admission that it owed Southwest Rock $137,417.22 as of September 16, 2010, the Court should grant the MPSJ with respect to at least that amount.  See Tr. at 4:23-5:22 (White).  Southwest Rock pointed out that J.A.R. Concrete did not produce the lien release, but only an affidavit from Rosales describing the lien release; in its view, the Court should, therefore, disregard the lien evidence.  See Tr. at 5:23-6:19 (Court, White).

Further, Southwest Rock argued that the lien-release argument is a red herring: in its view, the lien release was intended meant to protect J.A.R. Concrete by showing that J.A.R. Concrete had paid Southwest Rock, and, because the parties performed the contracts over three

---

[6] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

years ago, J.A.R. Concrete now does not benefit from such a lien release.  See Tr. at 6:20-7:18

(White).  Southwest Rock admitted that the contracts required a lien release to receive payment,

but pointed to Rosales' letter as evidence that J.A.R. Concrete acknowledged the debt, and

argued that one cannot "avoid the fundamental duty of good faith and fair dealing by" pointing

out that the other party did not sign their release form.  See Tr. at 7:22-8:21 (Court, White).

Southwest Rock argued that the Court could determine that question on a motion for summary

judgment, and contended that the lien waiver's purpose is to protect a purchaser from an

unscrupulous seller, and that those facts are not present here.  See Tr. at 8:23-9:16 (Court,

White).

　　　J.A.R. Concrete conceded that there are two contracts in this case.  See Tr. at 9:24-10:17

(Court, Cervantes).  J.A.R. Concrete did not, however, agree that the Court should declare that

J.A.R. Concrete owes any minimum amount to Southwest Rock, because it believes Southwest

Rock's narrative ignores an important qualification in the admission: the date.  See Tr. at 10:18-

11:19 (Court, Cervantes).  In J.A.R. Concrete's view, it admitted only that it owed Southwest

Rock that amount "as of September 16, 2010," and, it argued, the facts changed after that date:

J.A.R. Concrete found out that Southwest Rock overstated how much material it had crushed,

and the amount that Southwest Rock "crushed did not correspond with the amount used."  Tr. at

11:19-12:4 (Cervantes).  J.A.R. Concrete underscored its view that it was not responsible to pay

Southwest Rock for what Southwest Rock crushed, but for what the Department of

Transportation accepted and used in its projects.  See Tr. at 12:5-19 (Cervantes).  J.A.R.

Concrete argued that Southwest Rock overstated how much the Department of Transportation

used, and under-produced a particular rock aggregate that J.A.R. Concrete needed, which

required J.A.R. Concrete to buy aggregate from another supplier and complete its job at a higher

cost.  See Tr. at 12:10-19 (Cervantes).  J.A.R. Concrete argued that the Court should read both the letter and the admission more narrowly -- that is, "J.A.R. cannot dispute that on that date it acknowledged an amount owed Southwest Rock products . . . but that's not the same thing as saying [J.A.R. Concrete] owed it ultimately under the contracts.  It ignores the subsequent claims" that J.A.R. discovered later.  Tr. at 12:24-13:22 (Court, Cervantes).  In J.A.R. Concrete's view, the admission speaks only to what it understood itself to owe at that point and not what it owes now.  See Tr. at 13:22-24 (Cervantez).  J.A.R. Concrete maintained that what it owes now depends on factual issues to be determined at trial -- e.g., how much rock Southwest Rock crushed and how much of what it crushed the Department of Transportation used.  See Tr. at 14:6-15 (Court, Cervantes).  J.A.R. Concrete argued that "Southwest is claiming that they're entitled to payment for what they crushed," when their contracts provide that Southwest is not entitled to payment on that basis.  Tr. at 15:3-11 (Cervantes).

The Court questioned J.A.R. Concrete's reading of the admission, suggesting that, although J.A.R. Concrete may have learned about facts that made it regret its admission, J.A.R. Concrete nonetheless admitted that it owed the money.  See Tr. at 15:12-21 (Court).  The Court stated that, if J.A.R. Concrete wanted to convey the meaning it now offers, it should have qualified its response to the request for admission accordingly.  See Tr. at 15:21-16:2 (Court). J.A.R. Concrete contended that its response was a simple mistake of fact; the Court said it would be only a unilateral mistake, which might not help J.A.R. Concrete's case.  See Tr. at 16:3-17:1 (Cervantes, Court).    J.A.R. Concrete replied that it relied on Southwest Rock's misrepresentations of the usable quantity of rock that Southwest Rock crushed.  See Tr. at 17:2-18 (Cervantes).  J.A.R. Concrete maintained that it did not need to produce evidence that it owes a different amount, because Southwest Rock did not carry its prima facie burden; J.A.R.

Concrete argued that no affidavits, deposition testimony, or other evidence supports Southwest Rock's assertion that J.A.R. Concrete owes it any particular amount.  See Tr. at 17:19-19:6 (Court, Cervantes).  In J.A.R. Concrete's view, its letter stating that it owed a particular amount of money does not satisfy Southwest Rock's prima facie burden, because, although it is admissible, it is not in the record within rule 56's meaning.  See Tr. at 19:7-20:20 (Court, Cervantes).  J.A.R. Concrete maintained that, although the document is admissible and no party disputes its authenticity, admitting it now would be misleading, because it is a snapshot of J.A.R. Concrete's understanding at an earlier time and does not represent its current understanding.  See Tr. at 20:21-21:13 (Court, Cervantes).

J.A.R. Concrete clarified its position regarding the lien releases: once it found out that Southwest Rock was not paying M.C. Donegan, it requested a lien release and/or acceptance of a joint check to hedge against the risk of a "duplicate payment" -- that is, "if J.A.R. paid [Southwest Rock] and [Southwest Rock] was not paying its subcontractor[,] J.A.R. could be liened [sic] and have to pay the subcontractor a second time."  Tr. at 21:14-22:3 (Cervantes). J.A.R. Concrete conceded that the lien release was more of a precondition to it paying -- a protection for J.A.R. Concrete from a claim M.C. Donegan might bring -- and that it does not affect the amount of money J.A.R. Concrete owes to Southwest Rock.  See Tr. at 22:14-24 (Court, Cervantes).  The Court suggested that, although the lien-release issue may prevent the Court from entering a judgment awarding Southwest Rock a particular amount, whether the Court can declare that J.A.R. Concrete owes Southwest Rock a minimum amount is a different question that the Court should decide based on whether Southwest Rock met its prima facie case and whether J.A.R. Concrete responded adequately.  See Tr. at 22:25-15 (Court).  J.A.R. Concrete replied that the Court could not resolve that question without analyzing disputed issues

of fact, given that J.A.R. Concrete does not concede that it owes Southwest Rock "$137,000[;]" the Court replied that J.A.R. Concrete would need to have produced evidence as to the correct amount of the debt, and that, as the nonmovant, it cannot wait until trial to describe the correct amount.  Tr. at 23:16-24:10 (Cervantes, Court).  J.A.R. Concrete argued that Southwest Rock had not satisfied its prima facie burden, because nothing in the record brings the letters that Southwest Rock cites into evidence, and because the admission is a snapshot at a particular time, not a concession of the amount J.A.R. Concrete finally owed.  See Tr. at 24:11-25:13 (Cervantes, Court).

J.A.R. Concrete also pointed to a contract provision that allows J.A.R. Concrete to require a seller to submit lien and bond releases in a form J.A.R. Concrete will accept, and argued that, while a lien would be insignificant now, in September, 2010, it was significant, because it protected J.A.R. Concrete from Southwest Rock's unpaid contractor.  See Tr. at 25:24-27:22 (Cervantes, Court).  In J.A.R. Concrete's view, therefore, the contracts allowed it to refuse to pay on the ground that Southwest Rock did not provide a lien release.  See Tr. at 27:22-28:1 (Cervantes).  J.A.R. Concrete argues that if Southwest Rock had "accepted a two party check with their subcontractor's name on it J.A.R. would have assured itself" that it would be protected.  Tr. at 28:2-14 (Cervantes).  The Court suggested that, by sending the check, J.A.R. Concrete waived that provision's protection; J.A.R. Concrete replied that, assuming there were no other potential lien claimants, by issuing the two-party check both to Southwest Rock and to M.C. Donegan, the parties would have resolved the need for a lien release.  See Tr. at 28:20-29:14 (Court, Cervantes).  At that point, J.A.R. Concrete stated that it did not send the check, but only sent a letter stating that it would send a check.  See Tr. at 29:15-6 (Court, Cervantes).  J.A.R. Concrete later clarified that it wrote a joint check to Southwest Rock and to M.C.

Donegan, and produced it in this litigation, and that J.A.R. Concrete sent a copy of the check along with a lien release requesting that Southwest Rock execute the lien release.  See Tr. at 35:1-36:23 (Cervantes, Court).  After some discussion among the parties about the lien release's terms, J.A.R. Concrete repeated its central theme that it had never intended its letter as a final accounting, but rather as a snapshot in time; as further support for this argument, J.A.R. Concrete pointed to portions of the letter in which J.A.R. Concrete indicated that financial issues between the parties remain unresolved.  See Tr. at 40:1-22 (Cervantes).

Southwest Rock began its reply by arguing that M.C. Donegan had nothing to do with this dispute, because it had already been paid.  See Tr. at 31:3-5 (Shull).  Southwest Rock offered its version of the events related to the joint check: Southwest Rock sent M.C. Donegan a letter; M.C. Donegan then sent Rosales a letter and got no response; according to Southwest Rock, "there were requests for that, get the money to [M.C. Donegan], it's [M.C. Donegan's] money, we'll sign off on it, we'll sign the requisite lien waivers representing $29,000.  Nothing happened."  Tr. at 31:9-21 (Shull).  Southwest Rock argued that the calculations in Rosales' letter represent J.A.R. Concrete's calculations of what it owed Southwest Rock and that it is false to suggest that J.A.R. Concrete did not know what it owed.  See Tr. at 31:22-32:7 (Shull).  The Court asked whether it would be able to piece together the story of this case from the record; Southwest Rock argued that the Court could piece together the limited issue how much J.A.R. Concrete understood itself to owe.  See Tr. at 32:14-25 (Court, Shull).

The Court indicated that it was inclined to grant the motion, at least with respect to the declaration that J.A.R. Concrete owed Southwest Rock $137,417.22.  See Tr. at 41:10-19 (Court).  The Court indicated that it had not decided whether the lien-release issue would preclude the Court from granting further relief: although its first inclination had been to conclude

that the lien-release issue precluded further relief, that issue seemed less significant after the hearing.  See Tr. at 41:20-42:4 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Schs., No. CIV 11-0422 JB/KBM, 2013 WL 3462484, at *23 (D.N.M. June 28, 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex Corp v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[7]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238,

---

[7] Although the Hon. William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A C. Wright & A. Miller, Federal Practice & Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

1241 (10th Cir. 1990).   See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir.

1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific

facts showing that there is a genuine issue for trial as to those dispositive matters for which it

carries the burden of proof." (internal quotation marks omitted)).   Rule 56(c)(1) provides: "A

party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).   It

is not enough for the party opposing a properly supported motion for summary judgment to "rest

on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477

U.S. at 256.   See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson

v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.'" (citation omitted)).   Nor can a party "avoid summary judgment by repeating

conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l

Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Argo v.

Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P.

56(e)).   "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of

facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope

that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1

(quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999);

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Fourth, the court cannot decide any issues of credibility. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING WITHDRAWING ADMISSIONS[8]

Rule 36(a)(1) of the Federal Rules of Civil Procedure provides that "[a] party may serve on any other party a written request to admit" the truth of certain matters. If a matter is admitted, it "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Subject to "Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

A district court has considerable discretion whether to permit withdrawal or amendment of an admission. That "discretion must be exercised within the bounds of th[e] two-part test." American Auto Association v. AAA Legal Clinic, 930 F.2d 1117, 1119 (5th Cir. 1991). Rule 36(b)'s provision for withdrawal or amendment of an admission "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed. R. Civ. P. 36(b) advisory committee notes (citation omitted). In deciding whether to grant a rule 36(b) request to withdraw or amend a discovery response, "[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than [] on the moving party's

---

[8] J.A.R. Concrete does not ask the Court to withdraw its admission. Rather, J.A.R. Concrete admits the continuing validity of its response to the request for admission, but asks the Court to read it in a particularized sense. Although the Court declines to do so, the Court nonetheless notes that a party may withdraw an admission in the circumstances this section describes. J.A.R. Concrete has not, by motion or otherwise, asked the Court for permission to withdraw or alter its admission.

- 19 -

excuses for an erroneous admission." Kirtley v. Sovereign Life Ins. Co., 212 F.3d 551, 556 (10th Cir. 2000)(citations and internal quotation marks omitted).

Inconvenience alone does not constitute prejudice.  See Raiser v. Utah County, 409 F.3d at 1246.  "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth.  Something more is required."  Raiser v. Utah County, 409 F.3d at 1246 (citations and internal quotations omitted).  Specifically, "preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." Raiser v. Utah County, 409 F.3d at 1246 (citation and internal quotation marks omitted).  The prejudice that rule 36(b) contemplates "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." Raiser v. Utah County, 409 F.3d at 1246 (citation and internal quotation marks omitted).

## NEW MEXICO LAW REGARDING BREACH-OF-CONTRACT CLAIMS[9]

A contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent.  See UJI 13-801 NMRA.  A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused.  See N.M.R.A., Civ. UJI 13-822.  Incomplete performance is

---

[9] The parties' contracts do not include a choice-of-law provision. The parties invoke the Court's diversity jurisdiction, so the Court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-Cola Bottling Co. v. PepsiCo, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005)("In a diversity action, we apply the substantive law of the forum state, including its choice of law rules."). The Court therefore applies New Mexico choice-of-law principles in determining what substantive law to apply. Ordinarily, New Mexico will apply the choice-of-law rule of *lex loci contractus* -- the law of the place of contracting -- to contracts issues. See Carl Kelley Const. LLC v. Danco Tech., 656 F. Supp. 2d 1323, 1336 (D.N.M. 2009)(Browning, J.). The parties have not provided the Court sufficient information to perform the choice-of-law analysis. In any event, the choice-of-law question makes no difference to the result in the present MPSJ, because the dispute here is a factual one -- i.e., whether there is a genuine issue of material fact -- and not a dispute about what law applies or how the law applies to the facts.

a breach of contract.  See Cochrell v. Hiatt, 1981-NMCA-125 97 N.M. 256, 258-59, 638 P.2d

1101, 1103-04 (holding that, where the contract called for the roof to be restored to a "healthy"

state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-

five year period, the defendant's performance was incomplete, and the defendant was in breach

of the contract).  Under New Mexico law, "[t]he elements of a breach-of-contract action are the

existence of a contract, breach of the contract, causation, and damages."  Abreu v. N.M.

Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and
> binding contract; (2) the plaintiff's compliance with the contract and his
> performance of the obligations under it; (3) a general averment of the
> performance of any condition precedent; and (4) damages suffered as a result of
> defendant's breach.

McCasland v. Prather, 1978-NMCA-098, 92 N.M. 192, 194, 585 P.2d 336, 338.

Applying these principles in Armijo v. N.M. Dep't of Transp., No. CIV. 08-0336

JB/ACT, 2009 WL 1329192 (D.N.M. Apr. 6, 2009)(Browning, J.), the Court found that a

plaintiffs' allegations failed to state a claim for breach of contract.  In support of the breach-of-

contract claim, the plaintiff asserted that "the Department would follow state employment

policies and procedure, and that the Department terminated him in breach of those policies

without just cause."  2009 WL 1329192, at *7.  The Court noted that the plaintiff did not

"indicate what contractual provisions or employment policies the Department breached," and did

not say "to what his employment contract entitles him or of what the Department deprived him."

2009 WL 1329192, at *7.  The Court found that there was "not enough . . . to determine whether,

if taken as true, the Complaint's allegations would support claims for breach of contract."  2009

WL 1329192, at *8.  On the other hand, the Court has previously determined that a pro se

plaintiff sufficiently alleged that his counsel breached a contract for legal representation by

alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff.  See Archuleta v. City of Roswell, No. CIV 10-1224 JB/RHS, 2012 WL 4950324, at **16-17 (D.N.M. Sept. 30, 2012)(Browning, J.).

"Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract."  Anderson Living Trust v. ConocoPhillips Co., LLC, No. CIV 12-0040 JB/LFG, 2013 WL 3456913, at *42 (June 28, 2013)(Browning, J.).  As the Supreme Court of New Mexico stated in Romero v. Mervyn's, 1989-NMSC-081, 109 N.M. 249, 784 P.2d 991: "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  109 N.M. at 255, 784 P.2d at 998. Punitive damages are not available when they are "predicated solely on gross negligence.  In addition to, or in lieu of, such negligence there must be evidence of an evil motive or a culpable mental state."  Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, 118 N.M. 208, 211, 880 P.2d 300, 308 (internal quotation marks omitted).  The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm."  Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308 (citation and secondary quotations omitted).  A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind."  Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308

(citation and secondary quotations omitted).  The New Mexico Civil Jury Instructions define the

elements necessary for an award of punitive damages for a breach of contract as follows:

> If you find that _____ (*name of party making claim for punitive damages*)
> should recover compensation for damages, and if you further find that the conduct
> of _____ (*name of party whose conduct gives rise to a claim for punitive
> damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent],
> then        you        may        award        punitive        damages.

UJI 13-861 NMRA.

### NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION

In contract cases, "the role of the court is to give effect to the intention of the contracting

parties."  Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 122 N.M. 422, 925 P.2d 1184.

"The primary objective in construing a contract is not to label it with specific definitions or to

look at form above substance, but to ascertain and enforce the intent of the parties as shown by

the contents of the instrument."  Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22 (citing

Shaeffer v. Kelton, 1980-NMSC-117, 95 N.M. 182, 185, 619 P.2d 1226, 1229).  "The parol

evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps even

supplement the writing.'"  Memorial Med. Ctr., Inc. v. Tatsch Const., Inc., 2000-NMSC-030,

¶ 16, 129 N.M. 677, 12 P.3d 431 (citation omitted).   On the other hand, New Mexico has

"adopted the contextual approach to contract interpretation, in recognition of the difficulty of

ascribing meaning and content to terms and expressions in the absence of contextual

understanding."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, 114 N.M. 778, 781, 845 P.2d

1232, 1235 (citation and internal quotation marks omitted).  See Pedroza v. Lomas Auto Mall,

Inc., No. CIV 07-0594 JB/RHS, 2013 WL 4446770, at *18 (D.N.M. Aug. 2, 2013)(Browning,

J.).

"The question whether an agreement contains an ambiguity is a matter of law."  Hartnett v. Papa John's Pizza USA, Inc., 912 F. Supp. 2d 1066, 1092 (D.N.M. 2012)(Browning, J.).  See Mark V., Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citing Levenson v. Mobley, 1987-NMSC-102, 106 N.M. 399, 401, 744 P.2d 174, 176).  When the "evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law."  Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.  A contract "is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense . . . and may be ascertained from a dictionary."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111 (internal quotation marks omitted)(applying principle to insurance policy).  "A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions.  The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity."  Vickers v. N. Am. Land Dev., Inc., 1980-NMSC-021, 94 N.M. 65, 68, 607 P.2d 603, 606 (citation omitted).

"An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."  Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citation omitted).  If the court finds that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists."  Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235 (citing Vickers v. North Am. Land Dev., Inc., 94 N.M. at 68, 607 P.2d at 606 (1980)).

> [I]n determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance. . . .  It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions.

. . . .

It may be that the evidence presented is so clear that no reasonable person would determine the issue before the court in any way but one.  In that case, to the extent the court decides the issue, the question then may be described as one of law.

C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, 112 N.M. 504, 508-10, 817 P.2d

238, 242-44 (affirming the trial court because it "considered all evidence adduced in response to

the motion for summary judgment, including collateral or extrinsic evidence of the

circumstances surrounding the execution of the lease amendment, and quite properly found no

ambiguity")(citations and footnote omitted).  In addition, in determining whether an ambiguity

exists,

> [a] court may employ the many rules of contract interpretation that do not depend on evidence extrinsic to the contract.  See, e.g., Smith v. Tinley, 100 N.M. 663, 665, 674 P.2d 1123, 1125 (1984) (reasonable interpretation of contract is favored); Schultz & Lindsay Constr. Co. v. State, 83 N.M. 534, 536, 494 P.2d 612, 614 (1972) (uncertainties construed strictly against drafter); Id. at 535, 494 P.2d at 613 (each part of contract is to be given significance according to its place in the contract so as to give effect to the intentions of the parties).

C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. at 510 n.5, 817 P.2d at 244 n.5.  Once the

Court finds that an ambiguity exists, the resolution of that ambiguity becomes a question of fact.

See Mark V, Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.  To decide the meaning of any

ambiguous terms, "the fact finder may consider extrinsic evidence of the language and conduct

of the parties and the circumstances surrounding the agreement, as well as oral evidence of the

parties' intent."  Mark V, Inc. v. Mellekas, 114 N.M. at 782, 845 P.2d at 1236.  "[I]f the court

finds ambiguity, the jury (or court as the fact finder in the absence of a jury) resolves the

ambiguity as an issue of ultimate fact before deciding breach and damages."  C.R. Anthony Co.

v. Loretto Mall Partners 112 N.M. at 507, 817 P.2d at 241.

## NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990)(citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642 (internal quotation marks omitted). "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 7, 114 N.M. 449, 188 P.2d 1200 (secondary quotations omitted). The Supreme Court of New Mexico has expressed reluctance, however, to use the covenant of good faith and fair dealing "under circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract." Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642.

> "Generally, in the absence of an express provision on the subject, a contract contains an implied covenant of good faith and fair dealing between the parties. Under the implied covenant of good faith and fair dealing, courts can award damages against a party to a contract whose actions undercut another party's rights or benefits under the contract. Our Supreme Court has nevertheless refused to apply this implied covenant to override an express at-will termination provision in an integrated, written contract."

Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co, 407 F.3d 1091, 1114-15 (10th Cir. 2005)(quoting Kropinak v. ARA Health Servs., Inc., 2001-NMCA-081, ¶¶ 3-4, 131 N.M. 128, 33 P.3d 679)(secondary citations omitted).

New Mexico has recognized that a cause of action for breach of the covenant of good faith and fair dealing sounds in contract. See Bourgeous v. Horizon Healthcare Corp., 1994-

NMSC-038, 117 N.M. 434, 439, 872 P.2d 852, 857.  The Supreme Court of New Mexico has also explained that tort recovery for breach of the covenant of good faith and fair dealing is permissible only where a special relationship exists, such as between an insurer and its insured. See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.  The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857 (citations omitted)(internal quotation marks omitted). Similarly, the Court of Appeals of New Mexico has held that "[t]he claim of breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists." Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, ¶ 18, 140 N.M. 552, 144 P.3d 111.

The Supreme Court of New Mexico has indicated that "the duty to not act in bad faith or deal unfairly" which an implied covenant of good faith and fear dealing within a contract imposes "becomes part of the contract and the remedy for its breach is on the contract itself." Bourgeous v. Horizon Healthcare Corp., 117 N .M. at 439, 872 P.2d at 857 (discussing an Arizona case and distinguishing this measure of damages from tort damages that are available for breach of this covenant in the insurance context).  In the insurance context, however, a plaintiff can recover tort damages for breach of this implied covenant.  See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.

The Supreme Court of New Mexico has noted that it does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship." Melnick v. State Farm Mut. Auto. Ins. Co., 1998-NMSC-012, 106 N.M. 726, 730, 749 P.2d 1105, 1109.  This limitation is because "there is no contract of employment upon which

the law can impose the stated duty to exercise good faith and fair dealing." <u>Sanchez v. The New Mexican</u>, 1987-NMSC-059, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (emphasis in original).

<u>**ANALYSIS**</u>

After its admission before the case began that it owed $137,417.22, after it sent Southwest Rock a letter offering to pay $137,417.22, and after it admitted in its response to a request for admission that it owed $137,417.22, it is difficult for J.A.R. Concrete to say, in response to Southwest Rock's MPSJ, that, it owes something, but it is not $137,417.22.  The Court concludes that there is no genuine issue of material fact regarding the minimum amount that J.A.R. Concrete owes Southwest Rock.  However, because Southwest Rock has not yet supplied J.A.R. Concrete an acceptable lien release, the Court will not award Southwest Rock that amount at this time.[10]

**I.     THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING THE MINIMUM AMOUNT THAT J.A.R. CONCRETE OWES SOUTHWEST ROCK.**

The Court concludes that there is no genuine issue of material fact regarding the minimum amount that J.A.R. Concrete owes Southwest Rock.  J.A.R. Concrete has produced no evidence of the performance issues it alleges.  Further, that Southwest Rock failed to sign an acceptable lien release does not undercut J.A.R. Concrete's multiple admissions that it owes Southwest Rock $137,417.22.  The Court, therefore, will treat the minimum amount that J.A.R. Concrete owes Southwest Rock as established in the case.  <u>See</u> Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact -- including an item of damages or other relief -- that is not genuinely in dispute and treating the fact as established in the case.").

Southwest Rock has met its prima facie burden regarding the minimum amount J.A.R.

---

[10] Because J.A.R. Concrete concedes that the parties entered into the two contracts, the Court concludes that there is no genuine issue of material fact regarding the contracts' existence.

Concrete owes.   Standing alone, J.A.R. Concrete's affirmative response to this request for admission would satisfy Southwest Rock's burden: "Please admit that as of 9/16/2010 J.A.R. Concrete, Inc. owed Southwest Rock Products, LLC $137,417.22."   RFA at 2.   Rosales' letter confirms J.A.R. Concrete's position by acknowledging that J.A.R. attempted to pay Southwest Rock $29,442.42, and owed an additional payment of $107,974.80.   Rosales Letter at 1.

J.A.R. Concrete concedes that, if Southwest Rock had carried its prima facie burden, J.A.R. Concrete would have to respond with evidence that creates a genuine issue of material fact.   See Vitkus v. Beatrice Co., 11 F.3d at 1539 (10th Cir. 1993)("[T]he nonmoving party . . . must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).   J.A.R. Concrete argues that it need not respond with such evidence here, however, because Southwest Rock did not satisfy its prima facie burden.   In support, J.A.R. Concrete contends that neither the admission nor the Rosales letter are "evidence of record."   By this, the Court presumes J.A.R. refers to the following provision of rule 56:

**(c) Procedures.**

**(1)** *Supporting Factual Positions.*   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials <u>in the record</u>, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(emphasis added).   Having pointed out that Southwest Rock failed to authenticate these documents, J.A.R. Concrete nonetheless expressly concedes that the evidence

is admissible.  When the Court pressed J.A.R. Concrete to identify an objection to the exhibits, J.A.R. Concrete contended that the admission and the letter, taken in a vacuum, are misleading, because they represent only J.A.R. Concrete's erroneous belief at the time that it owed Southwest Rock $137,417.22 -- not its ultimate conclusion, based on later evidence, that it owes less than that.  J.A.R. Concrete argues that, at trial, it could present witness testimony to put the letter in a more favorable light.

Properly stated, J.A.R. Concrete's sole basis for its objection is that the evidence does not tell its side of the story.  That evidence does not present both sides of a case, however, does not mean it is inadmissible or that the Court cannot consider it on a motion for summary judgment. The Court concludes that Southwest Rock has satisfied its prima facie summary judgment burden.

Instead of responding to Southwest Rock's evidence with its own, J.A.R. Concrete alleges that its admission does not mean what it says.  J.A.R. Concrete argues that the Court should treat the admission as a "snapshot in time;" that is, in J.A.R. Concrete's telling, the admission captured only J.A.R. Concrete's initial, erroneous position that it owed Southwest Rock $137,417.22 -- a position that changed when J.A.R. Concrete learned that Southwest Rock's performance did not satisfy their contracts' terms.

The admission's plain language forecloses J.A.R. Concrete's proposed meaning.  If J.A.R. Concrete meant that, as of September 16, 2010, it wrongly believed it owed Southwest Rock money, but that it based that belief on erroneous information, it should have said so. Instead, J.A.R. admitted, without qualification, that, "as of 9/16/2010 J.A.R. Concrete, Inc. owed Southwest Rock Products, LLC $137,417.22."  RFA at 2.  That J.A.R. Concrete now regrets its overbroad admission does not eliminate its obligation to support its theory with evidence.  J.A.R.

Concrete may not evade the consequences of its failure to satisfy that obligation by distorting its admission. The Court, therefore, declares that there is no genuine dispute regarding the fact that J.A.R. Concrete owes Southwest Rock, at a minimum, $137,417.22, and the Court will treat that fact as established in this case.

## II.     THE COURT WILL NOT AWARD SOUTHWEST ROCK THE MINIMUM AMOUNT OWED, BECAUSE IT HAS NOT COMPLIED WITH THE PURCHASE AGREEMENT'S LIEN-RELEASE CONDITION.

The Court will not award Southwest Rock the minimum amount owed. Although J.A.R. Concrete's admissions fix a damages floor, Southwest Rock has not complied with an express contractual precondition to collecting that amount: it has neither signed a lien release acceptable to J.A.R. Concrete nor adequately explained why the law excuses its noncompliance. The Court will not, therefore, award pretrial Southwest Rock the minimum amount owed.

The parties contracts contain the following provision:

> 4.3     Buyer's obligation to pay Seller is also conditioned upon Seller's timely and prior submittal of conditional and unconditional lien and bond releases in a form acceptable to Buyer. Buyer retains the right to take whatever steps it deems necessary to ensure that all payments will be utilized to pay potential lien or bond claimants, including, but not limited to, the issuance of joint checks.

Purchase Agreement at 3. Southwest Rock concedes that it did not comply with this express condition.

Southwest Rock raises two principal objections to the lien-release argument. First, it argues that the lien-release argument is a red herring, because, as J.A.R. Concrete concedes, a lien release would have little real-world significance now, given that any such liens would be untimely.[11] Although that reality may be true, it remains an express contractual precondition to

---

[11] The parties did not elaborate on the reasoning behind this statement, but neither did they dispute the basic principle.

payment, and, because Southwest Rock has not satisfied that condition, the Court cannot award Southwest Rock the minimum amount that J.A.R. Concrete owes it.

Southwest Rock also argues that the lien release J.A.R. Concrete proposed had coercive terms -- that is, that it was a "lien release" in name only, because its terms would have required Southwest Rock to release liens for the entire project and not only for the amounts J.A.R. Concrete offered to pay at that time. This argument's fatal flaw is that Southwest Rock did not give the Court a copy of this allegedly coercive lien release. Southwest Rock states that it does not need to do so. It points out that, although J.A.R. Concrete's Response includes an affidavit that describes the lien release, it does not include a copy of the lien release; in its view, the Court should not, therefore, consider the lien release, and J.A.R. Concrete's omission relieves it of the responsibility to attach its own copy. This argument misreads the summary judgment rules. It is true that the Court cannot properly consider testimony about the lien release's substance without a copy of the lien release. See Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."); Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 1002, at 1002-1 to 1002-13 (discussing the rule). The Court can, however, consider testimony about the lien release as evidence that the lien release existed. As Professors Charles Alan Wright and Arthur Miller explain:

> [I]f written documents are relied upon they actually must be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient. But testimony otherwise admissible need not be stricken simply because it contains evidence that also appears in written documents that are not attached to the affidavit; the absence of the documents may affect the testimonial weight given the affidavit but it will not make it inadmissible. Illustrating the application of this distinction, it has been held that averments in an affidavit purporting to present the substance of contracts will be admissible to show the fact that the agreements have been entered into or offered, but will be insufficient to prove the terms of the agreements unless sworn or certified copies of them are

attached to the affidavit.

10A C. Wright & A. Miller, <u>Federal Practice & Procedure</u> § 2722, at 380-82 (3d ed. 1998)(footnotes omitted).  Similar reasoning applies here: although Rosales' affidavit alone is insufficient as to the lien release's terms, it is sufficient to demonstrate that Southwest Rock did not execute a lien release.  Indeed, because Southwest Rock asks the Court to enter summary judgment in its favor, Southwest Rock bears the burden either to demonstrate its compliance with the contractual condition by producing an executed lien release or to explain why the law excuses its noncompliance with the condition.  The Court could not award Southwest Rock the amount it seeks without this evidence.

It may be true, as Southwest Rock argues, that J.A.R. Concrete abused its contractual prerogative to approve the lien release.  That argument, however, relies on the lien release's terms.  To the extent Southwest Rock wishes to rely on those terms, the summary judgment rules obligate Southwest Rock to present those terms to the Court in an admissible form.  Because Southwest Rock has neither satisfied the contract's terms nor explained why the law excuses its noncompliance, the Court cannot award Southwest Rock the minimum amount J.A.R. owes it.

**IT IS ORDERED** that the Plaintiff's Motion for Partial Summary Judgment, filed January 4, 2013 (Doc. 45), is granted in part and denied in part.  The Court declares that Defendant J.A.R. Concrete, Inc. owes Plaintiff Southwest Products, LLC a minimum of $137,417.22, and will treat that fact as established in this case.  The Court will not, however, award Southwest Rock that amount at this time.

_____
UNITED STATES DISTRICT JUDGE

- 33 -

*Counsel:*

Robert A. Shull
Mariscal Weeks McIntyre & Friedlander, P.A.
Phoenix, Arizona

-- and --

Lawrence R. White
Joshua L. Smith
Miller Stratvert, P.A.
Las Cruces, New Mexico

     *Attorneys for the Plaintiff and Counterdefendant*

Joseph Cervantes
Cervantes Law Firm, P.C.
Las Cruces, New Mexico

     *Attorney for the Defendant and Counterclaimant*